IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVEN TUPPENY, JENNIFER TUPPENY, A.W., a minor child, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civ. No. 13-1556-LPS |
| THE CITY OF WILMINGTON, DETECTIVE PETER M. LECCIA, UNKNOWN OFFICERS, | ) ) ) ) ) | |
| Defendants. | ) | |

Louis J. Rizzo, Jr., Reger Rizzo Kavulich & Darnall, LLP, Wilmington, DE

Attorney for Plaintiffs.

Rosemaria Tassone, City of Wilmington Law Department, Wilmington, DE

Attorney for Defendants.

## MEMORANDUM OPINION

March 24, 2015
Wilmington, Delaware

*[signature]*
**STARK, U.S. District Judge:**

## I. INTRODUCTION

On September 13, 2013, Steven Tuppeny ("Mr. Tuppeny"), Jennifer Tuppeny ("Ms. Tuppeny"), and A.W., a minor child (collectively, "Plaintiffs"), filed this civil action against the City of Wilmington ("the City"), Detective Peter M. Leccia ("Detective Leccia"), and Unknown Officers ("Unknown Officers"). (D.I. 1) On November 13, 2013, Defendants filed a Joint Motion to Dismiss in Lieu of an Answer, or in the Alternative, a Motion for Summary Judgment ("Defendants' Motion"). (D.I. 6) The matter is fully briefed. (D.I. 7, 11, 12, 13)

## II. BACKGROUND

For purposes of evaluating Defendants' Motion, the Court takes as true the following factual allegations contained in the complaint.

Plaintiffs reside in Middletown, Delaware in their home (hereinafter, "Home"). (D.I. 1 at 1) On the morning of October 4, 2012, at approximately 6:00 A.M., armed Unknown Officers entered Plaintiffs' Home. (*Id.* at 1-3) The Unknown Officers encountered Mr. Tuppeny in the garage and restrained him with plastic handcuffs at gun point, forcing him to lie face down. (*Id.*) Other Unknown Officers, who were members of the Wilmington Police Department's ("WPD") SWAT unit, broke through the Home's front door "without knocking or ringing the doorbell, or otherwise announcing their presence using a battering device to force their way into the [H]ome." (*Id.* at 3)

Once inside the Home, the SWAT unit entered a bedroom in which Ms. Tuppeny and A.W. were sleeping. (*Id.*) Authorities subsequently relocated all three Plaintiffs to the family room inside the Home. (*Id.*) Plaintiffs further allege that "[n]one of the Plaintiffs had violated

1

any law or regulation. None were accused of any violation. [And] no explanation or apology for Defendants' conduct was offered." (*Id.* at 4)

The complaint makes no mention of a search warrant (*see id.* at 1), but Defendants have provided a warrant as an exhibit in connection with their motion to dismiss. (*See* D.I. 8 at 1) All parties agree the Court may take notice that, on October 3, 2012, Detective Leccia had obtained from the City of Wilmington Justice of the Peace Court a warrant to search the Home.[1] (*Id.* at 5) The record is silent as to whether a copy of the warrant was left with Plaintiffs.

The warrant authorized Detective Leccia, Unknown Officers, and the SWAT unit to search the Home in order to locate evidence related to a homicide investigation. (D.I. 7 at 2) The warrant additionally permitted Defendants to obtain a DNA sample from a person of interest ("POI"), as well as photograph the POI, if the POI could be located. (*Id.*; *see also* D.I. 14 at 2) An affidavit submitted in connection with the warrant to search the Home and gather DNA evidence describes the nature of the investigation and efforts authorities had implemented to locate the POI. (*See id.*)

Specifically, according to the warrant, authorities had previously arrested the POI at a particular location in Smyrna, Delaware on August 8, 2012. (*Id.* at 2) Because the incident was purported to have been a domestic dispute, the POI was not permitted to return to that Smyrna location. (*Id.*) Detective Leccia stated that the POI gave as his address the Middletown, Delaware address that turned out to be the Plaintiffs' Home. (*Id.*)

---

[1] Plaintiffs concede that courts regularly consider warrant applications that are not attached to a pleading in deciding 12(b)(6) motions. (D.I. 12 at 2)

## III. LEGAL STANDARDS

### A. Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation

marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the

nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## IV. DISCUSSION

Proceeding pursuant to 42 U.S.C. § 1983, Plaintiffs' complaint alleges that Defendants lacked probable cause in obtaining the search warrant that led to the entry into their Home and, thus, violated Plaintiffs' constitutional rights to due process and to be free of unreasonable searches and seizures. (D.I. 1 at 5, 6)[2] Plaintiffs also allege that Defendants' conduct was unlawful by virtue of the fact that it was executed outside of Defendants' jurisdictional authority. (*Id.* at 10) Finally, Plaintiffs set forth claims for false imprisonment and battery under Delaware state law. (*Id.* at 10-11)

Defendants move to dismiss Plaintiffs' complaint or in the alternative for summary judgment. Specifically, Defendants contend that: (1) Plaintiffs fail to state a claim under the Fourth and Fourteenth Amendments because the Defendant Officers are entitled to qualified immunity; (2) Defendants were executing a valid search warrant and that the manner in which the warrant was executed was not unreasonable; (3) execution of a search warrant outside the jurisdictional limits of the City of Wilmington is not a violation of the United States Constitution; (4) there is no municipal liability on the part of the City pursuant to § 1983; and

---

[2]Pursuant to 42 U.S.C. § 1983, an individual may bring a claim against a state actor who deprived the individual of "rights, privileges, or immunities" secured by the Constitution or laws of the United States. *See Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.1996).

5

(5) Plaintiffs fail to state a claim under Delaware state law for false imprisonment or battery. (*See* D.I. 7) The Court addresses each of these contentions below.

### A. Qualified Immunity

Defendants contend that "qualified immunity protects government officials performing discretionary functions from liability for civil damages [if] their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (*Id.* at 7) Plaintiffs dispute Defendants' entitlement to qualified immunity and allege that the magistrate was misled into issuing the search warrant. (D.I. 12 at 8)

Evaluating a qualified immunity defense requires that the Court engage in a two-step analysis. "[A] court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citations omitted). Summary judgment based on qualified immunity is appropriate if no reasonable juror could conclude that Plaintiffs' clearly established rights were violated. *See Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995).

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. A Fourth Amendment search transpires when a government agent physically intrudes on

6

constitutionally protected areas, *see Florida v. Jardines*, 133 S.Ct. 1409, 1414 (2013), or invades "a subjective expectation of privacy that society recognizes as reasonable," *Kyllo v. United States*, 533 U.S. 27, 33 (2001). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980) (internal quotation marks omitted).

When officers apply for a search warrant, they submit in support an affidavit that "must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). "In *Franks*, the Court held that where a defendant showed by the preponderance of the evidence that a false statement necessary to the finding of probable cause was made knowingly and intentionally, or with reckless disregard for the truth, the constitution requires that any evidence derived from the exercise of that warrant . . . be excluded from a criminal trial." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (internal quotation marks omitted).

"A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware* . . . ." *Sherwood*, 113 F.3d at 399 (internal citations omitted). Hence, "the plaintiff[s] must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Id.* at 399 (internal citations omitted). The Third Circuit has held that "[g]enerally, the

7

existence of probable cause is a factual issue." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995).

Taking the facts in the complaint as true and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that Plaintiffs have not adequately alleged that Detective Leccia knowingly misled a magistrate by providing false material factual evidence or omitting material facts in connection with his application for the search warrant. As Defendants persuasively argue, "In a Complaint that never even once mentions the words 'search warrant,' Plaintiffs' statement [in their brief] 'that the entire premise of their Complaint rests on the fact that Detective Leccia presented to the magistrate a false and misleading affidavit' is overreaching." (D.I. 13 at 3-4) Even in their briefing, Plaintiffs fail to point to any specific "falsity or reckless disregard for the truth" to demonstrate that the magistrate could have been misled. *Franks*, 438 U.S. at 171-72. Plaintiffs' effort to deconstruct paragraph 11 of the affidavit (which, again, is not in the Complaint) does not plausibly allege that Detective Leccia knew the POI was falsely stating he resided at the same address as Plaintiffs' Home or that the POI actually did not give law enforcement the Home address as his own address.[3]

Plaintiffs point to the absence of any corroborating information – or, indeed, any information arising from investigation, such as property searches, surveillance, tips, etc. – in the affidavit, other than what was conveyed by the POI about his residence. However, Detective Leccia "was not required to undertake an exhaustive investigation in order to validate the

---

[3]The record contains apparently undisputed evidence that the POI had at least once listed Plaintiffs' Home as his residence, which Detective Leccia learned from the Delaware Criminal Justice Information Reporting System. (D.I. 12 at 5) It is also apparently undisputed that the POI's father had owned the Home prior to Plaintiffs' purchase of it. (*See id.* at 4-5)

8

probable cause that, in his mind, already existed." *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 791 n.8 (3d Cir. 2000). More importantly, Plaintiffs fail to allege any material omission of a kind necessary to state a claim on which relief may be granted.

Accordingly, Defendants' Motion will be granted.

## B.    Reasonable Execution of the Search Warrant

Defendants contend that there was no violation of Plaintiffs' constitutional rights "when they pointed guns at Plaintiffs, detained Plaintiffs and handcuffed Plaintiff Steven Tuppeny," or "when certain officers entered the bedroom where Plaintiff Jennifer Tuppeny and her daughter were located [. . . and then] the officers pointed their weapons and directed them to go downstairs." (D.I. 7 at 11) (internal quotation marks omitted) Plaintiffs argue that whether the warrant was executed reasonably cannot be determined on a motion to dismiss. (D.I. 12 at 14-15)

"[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Moreover, Plaintiffs' "detention represents only an incremental intrusion on personal liberty when the search of a home has been authorized by a valid warrant." *Los Angeles Cnty. v. Rettele*, 550 U.S 609, 613-14 (2007).

Authorities may use reasonable force to detain. *See Muehler v . Mena,* 544 U.S. 93, 94 (2005). The test for reasonableness is an objective one. *See Rettele*, 550 U.S. at 614. Courts look at the reasonableness of an officer's actions "at the moment," or "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). To that end, "the question is whether the officers' actions

9

[were] objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 396-97.

Plaintiffs fail to adequately state a claim regarding the reasonableness of the manner in which Defendants executed the search warrant in the Home. As Defendants note, "the Supreme Court has clearly held that 'the risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.'" (D.I. 7 at 13 (citing *Summers*, 452 U.S. at 702-03 (1981))) Accordingly, Defendants' Motion is granted on this basis as well.

### C. Execution of the Search Warrant Outside the City of Wilmington

Plaintiffs contend that the mere act of executing the search warrant outside the City of Wilmington, and therefore outside of the jurisdiction of the Wilmington Police Department, violated their rights to due process and equal protection of the law guaranteed under the United States Constitution. (D.I. 1 at 9-10) "Justice of the Peace Courts in Delaware may issue warrants statewide." *Walker v. City of Wilmington*, 360 Fed. Appx. 305, 313 (3d Cir. 2010) (internal citations and quotation marks omitted). "[W]hen officers have a valid search warrant from a magistrate of the relevant jurisdiction, the requirements of the Fourth Amendment are met even if the executing officers are acting outside their jurisdiction as defined by state law." *Id.* Accordingly, it follows from what the Court has already found regarding the validity of the search warrant that it must grant Defendants' Motion on this ground as well.

### D. Municipal Liability under Section 1983

Plaintiffs allege that the City of Wilmington, which employs Detective Leccia and the Unknown Officers, should be held liable under § 1983 because: (1) Plaintiffs were subjected to

10

an unlawful search and seizure; (2) the search and seizure was executed unreasonably; (3) and the search and seizure was executed outside the jurisdiction of the Wilmington Police Department. As an initial matter, Plaintiffs' claims against the City fail for all of the same reasons their claims against the other Defendants fails, as explained above.

Moreover, a municipality may be held liable under § 1983 only when the "execution of a government's policy or custom . . . inflicts . . . injury." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A government policy is established by a "decision maker possessing final authority," and a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." *Id.* (citing *Monell v. Department of Social Servs of the City of New York*, 436 U.S. 658 (1978)). A plaintiff seeking to recover from a municipality must (1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through its deliberate and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Here, Plaintiffs' vague reference to the City's "negligent, intentional, willful and/or wanton failure to adequately train and/or supervise its officers" does not adequately identify an unconstitutional policy or custom. Nor have Plaintiffs pled that the City of Wilmington was the "moving force" behind any alleged constitutional violation. Absent an allegation that a custom or policy established by the City directly caused harm to them, Plaintiffs cannot prevail on their § 1983 claim against the City.[4]

___

[4]Plaintiffs further allege municipal liability by the City of Wilmington based upon Delaware state law claims for false imprisonment and battery. However, as with the § 1983 claim, other than recitation of the elements of battery and false imprisonment, the Court can find

11

Accordingly, because the complaint fails to state a claim against the City on which relief may be granted, the Court will grant Defendants' Motion to the extent that the claims against the City will be dismissed. Given the Court's conclusions, amendment would be futile.

### E. False Imprisonment and Battery

In Delaware, false imprisonment is defined as the unlawful restraint of another against another's consent and without legal justification. *See Hunt v. State*, 69 A.3d 360, 368 (Del. 2013). To bring a successful claim for battery under Delaware law, a plaintiff must prove that a specific defendant intentionally caused the plaintiff to be in fear of an immediate harmful or offensive contact, without the plaintiff's consent. *See id.* at 368-69.

A judicial officer's finding of probable cause is a complete defense to state law tort claims for false imprisonment. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 & 636 (3d Cir. 1995). When a magistrate makes a finding of probable cause to support a valid warrant, an officer relying on the warrant has legal justification for his actions. *See Tyburski v. Groome*, 1980 WL 333070, at *6 (Del. Super. Jan. 28, 1980). By statute, *see* 11 Del. Code § 467, officers have authority to take a person into custody, and use reasonable force to do so, when executing an arrest warrant. *See In Request of Governor for Advisory Opinion*, 722 A.2d 307, 311 (Del. 1998). There can be no liability for battery under these circumstances.

Because the Court has determined that Plaintiffs failed to adequately allege facts showing the warrant was not supported by probable cause or that it was executed unreasonably, the Court must grant Defendants' Motion and dismiss the false imprisonment and battery claims.

---

no place in the complaint in which Plaintiffs allege any connection between the alleged torts and the City of Wilmington. Additionally, as explained in the next section, Plaintiffs have failed to state claims for false imprisonment or battery on which relief may be granted.

12

## V. CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motion and dismiss this action. An appropriate Order follows.